IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01798-WDM-MJW

ERICA CORDER,

    Plaintiff,

v.

LEWIS PALMER SCHOOL DISTRICT No. 38,

    Defendant.

---

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

Miller, J.

This matter is before me on Defendant's Motion for Judgment on the Pleadings (doc no 24) seeking to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (c). Plaintiff opposes the motion. For the reasons set forth below, Defendant's motion will be granted and Plaintiff's complaint will be dismissed.

### Background

According to her complaint, Plaintiff was a student at Lewis Palmer High School and one of fifteen students named as class valedictorian for the graduating class of 2006. In most previous years, the valedictorians were each permitted to give a short speech at the school's graduation ceremony. Prior to the 2006 ceremony, the school's principal, Mark Brewer, informed the valedictorians that they could decide whether all of the fifteen valedictorians, or a subset thereof, would deliver the valedictorian message. He did not provide any further instructions concerning the conduct or content of the speeches. The valedictorians themselves decided that each of them would speak for approximately 30

seconds and decided on a general topic for the speakers. The valedictorians selected Plaintiff and another student to deliver the concluding section of the speech.

Before a valedictorian would be allowed to present his or her speech at graduation, Mr. Brewer required each valedictorian to present his or her speech to him to review the content of each student's speech. The school district has a written policy governing student expression which prohibits a variety of types of speech such as slander and profanity, as well as speech that "[t]ends to create hostility or otherwise disrupt the orderly operation of the educational process." The policy makes no reference to religious speech.

Plaintiff presented her speech to Mr. Brewer before the ceremony; that speech did not mention her religious faith or Jesus. However, at the graduation ceremony, Plaintiff gave the following speech:

> Throughout these lessons our teachers, parents, and let's not forget our peers have supported and encouraged us along the way. Thank you all for the past four amazing years. Because of your love and devotion to our success, we have all learned how to endure change and remain strong individuals. We are all capable of standing firm and expressing our own beliefs, which is why I need to tell you about someone who loves you more than you could ever imagine. He died for you on a cross over 2,000 years ago, yet was resurrected and is living today in heaven. His name is Jesus Christ. If you don't already know Him personally I encourage you to find out more about the sacrifice He made for you so that you now have the opportunity to live in eternity with Him. And we also encourage you, now that we are all ready to encounter the biggest change in our lives thus far, the transition from childhood to adulthood, to leave Lewis-Palmer with confidence and integrity. Congratulations class of 2006.

At the conclusion of the ceremony, Plaintiff was escorted by a teacher to see Assistant Principal Bob Felice, who informed her that she would not receive her diploma and had to make an appointment with Principal Brewer. Plaintiff and her parents met with

2

Mr. Brewer on May 30, 2006. Plaintiff believed and understood from Mr. Brewer that she would not receive her diploma unless she publicly apologized for the speech. Plaintiff did not apologize for the content of her speech, but prepared a written statement explaining that the statements were her personal beliefs made without Mr. Brewer's prior approval. The draft submitted by Plaintiff is as follows:

> At graduation I know some of you may have been offended by what I said during the valedictorian speech. I did not intend to offend anyone. I also want to make it clear that Mr. Brewer did not condone nor was he aware of my plans before giving the speech. I'm sorry I didn't share my plans with Mr. Brewer or the other valedictorians ahead of time. The valedictorians were not aware of what I was going to say. These were my personal beliefs and may not necessarily reflect the beliefs of the other valedictorians or the school staff.

Mr. Brewer required that she insert the following sentence into the statement: "I realize that, had I asked ahead of time, I would not have been allowed to say what I did." Plaintiff received her diploma and the statement was distributed via email.

Plaintiff filed this lawsuit asserting the following claims: (1) violation of freedom of speech under the First Amendment; (2) compelled speech in violation of the First Amendment; (3) violation of the right to equal protection under the Fourteenth Amendment; (4) violation of freedom of religion under the First Amendment; (5) violation of C.R.S. § 22-1-120; and (6) violation of the Establishment Clause of the First Amendment. Plaintiff seeks nominal damages and declaratory and injunctive relief.

## Standard of Review

A motion for a judgment on the pleadings pursuant to Rule 12(c) is evaluated under the same standard as a motion brought under Rule 12(b)(6). A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).[1]

## Discussion

### 1. Claims for Declaratory and Injunctive Relief

Defendant first argues that Plaintiff's claims for declaratory and injunctive relief should be dismissed as moot. Specifically, because Plaintiff has graduated and received her diploma, there no longer exists a "live controversy" in this matter, the claim is moot, and this court does not have jurisdiction. *Lane v. Simon*, 495 F.3d 1182, 1186-87 (10th Cir. 2007) ("Because defendants can no longer impinge upon plaintiffs' exercise of freedom of the press, plaintiffs' claims for declaratory and injunctive relief are moot."). I agree.

Plaintiff argues in response that she does not seek injunctive relief. This is in direct contradiction to her Verified Complaint, which clearly sets forth in the Prayer for Relief a request that this court "issue a permanent injunction enjoining Defendant . . . from enforcing its unwritten policy [of] reviewing student graduation speeches to censor out religious

---

[1]The parties have also filed motions for summary judgment (docs no 33 and 34), which are fully briefed. However, the evidence submitted with the summary judgment briefs does not contradict the salient facts of the pleadings. In particular, it is undisputed that the school required review of the valedictorian speeches and that Plaintiff did not disclose any hint that her portion of the speech would include religious references because of her concern that the school would not permit her to do so. Accordingly, even if I considered these issues under the summary judgment standard with additional facts, I would reach the same end result, namely dismissal because no reasonable jury would find for the Plaintiff on the basis of the undisputed facts.

4

speech." Plaintiff also contends that there is a live issue because some of Defendant's conduct occurred after graduation, and so Plaintiff's graduation does not moot her claims. Plaintiff misses the point. Just as in *Lane*, Defendant is no longer in a position to screen Plaintiff's graduation speech, prevent her from giving a speech containing religious references, or compel her to issue an apology for doing so by conditioning receipt of her diploma upon such an apology–i.e., the defendant can no longer impinge on Plaintiff's freedom of speech and religion. Accordingly, Plaintiff's claims for declaratory or injunctive relief based on such conduct are moot.[2]

    2.    <u>First Amendment Freedom of Speech</u>

Plaintiff's first claim is based on several theories, including (1) forcing Plaintiff to apologize for mentioning Jesus Christ violated her free speech rights; (2) requiring the speeches to be screened was an unconstitutional prior restraint and screens out too much protected speech; (3) there were no written guidelines to control the decisionmaker's editing of student speeches; (4) screening of graduation speeches amounts to content and viewpoint restrictions on speech; (5) Plaintiff was improperly punished for her speech because it did not contain any elements prohibited by the school district's written policy regulating student speech and expression; and (6) forcing Plaintiff to apologize amounted to punishing Plaintiff on the basis of her religious viewpoint.

Defendant argues that Plaintiff's speech was not curtailed, since she gave the speech she wanted to, and that she was not required to apologize for the content of her

---

[2]Plaintiff also argues that her claim for nominal damages is not moot. Since Defendant did not challenge Plaintiff's nominal damages claims on mootness grounds, I need not address the issue.

5

speech but rather for possibly giving offense and for failing to disclose the content of her speech, which represented her views alone, to Mr. Brewer and the other valedictorians. Defendant also argues that the Plaintiff's speech should be analyzed as "school-sponsored speech." Under this line of case law, Defendant argues, the school has the right to monitor and control student expression under certain circumstances. Plaintiff argues in response that her speech was purely private speech that cannot be limited as Defendant contends.

The United States Supreme Court has established that although students in public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the First Amendment rights of students "are not automatically coextensive with the rights of adults in other settings." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (citations omitted). Purely private speech that happens to occur on school property should not be infringed unless school authorities have reason to believe that such expression will "substantially interfere with the work of the school or impinge upon the rights of other students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969). Similarly, speech in a limited public forum may only be subject to viewpoint-neutral limitations. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). Thus, to the extent that Plaintiff's speech is considered private speech or the graduation ceremony is considered to be a public forum, the *Tinker* analysis should apply. However, a school facility is deemed a public forum only if the school authorities have by policy or practice opened those facilities "for indiscriminate use by the general public" or by some segment of the public such as student organizations. *Hazelwood*, 484 U.S. at 267 (citations omitted). "If the facilities have instead been reserved for other intended purposes . . . then no public forum has been created, and school officials may impose reasonable

restrictions on the speech of students, teachers, and other members of the school community." *Id.* (citations omitted).

"The question whether the First Amendment requires a school to tolerate particular student speech . . . is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech." *Hazelwood*, 484 U.S. at 270-71. "The latter question concerns educators' authority over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school. These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Id.* at 271. Educators are entitled to exercise "greater control" over this kind of student expression "to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school." *Id.* Thus, a school may retain authority to refuse to sponsor student speech that might be perceived to, *inter alia,* "associate the school with any position other than neutrality on matters of political controversy." *Id.* at 272. School-sponsored expressive activities, therefore, may be subject to educators' editorial control without offending the First Amendment so long as the educators' actions are "reasonably related to legitimate pedagogical concerns." *Id.* at 273.

The Supreme Court has also held that the Establishment Clause of the First Amendment is violated in circumstances where a student's delivery of a religious message

7

before a sporting event would be perceived as "stamped with her school's seal of approval." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000). *Santa Fe* concerned a school policy intended to remedy the apparent constitutional violation deriving from the school's previous practice of presenting a prayer or invocation before football games. Under the new policy, the students voted on whether a prayer would be part of the activity. The Court deemed that the appearance of religious endorsement of a student-delivered prayer nonetheless came from the following factors: the invocation was delivered to a large audience assembled as part of a regularly scheduled school-sponsored function on school property, broadcast over the school's public address system which remained subject to the control of school officials, the invocation was part of a pregame ceremony presumably clothed in the traditional indicia of a school sporting event and prominently displaying the school's name. *Santa Fe*, 530 U.S. at 307-8. The Court concluded that the delivery of a religious message "over the school's public address system, by a speaker representing the student body, under the supervision of school faculty, and pursuant to a school policy that explicitly and implicitly encourages public prayer . . . is not properly characterized as 'private' speech." *Id.* at 310.

These principles were recently applied by the Tenth Circuit in *Fleming v. Jefferson County Sch. Dist. R-1*, 298 F.3d 918 (10th Cir. 2002). *Fleming* involved a tile painting project at Columbine High School, the site of a notorious school shooting incident. Upon deciding to reopen the school, the school district approved a project whereby students and other community members would create artwork on 4 x 4 tiles, which would then be installed throughout the school. The purpose of the project was to assist in reintroducing students to the school building, changing the school's appearance, and to have the

8

students be a part of reconstruction of their school. The project was not intended to be a memorial to the tragedy; accordingly, the guidelines for artwork prohibited references to the date of the attack, names or initials[3], religious symbols, and obscene or offensive content. The Tenth Circuit, interpreting *Hazelwood*, analyzed the two aspects of the standard for school-sponsored speech: the imprimatur concept and the pedagogical interest of the school. 298 F.3d at 924. The imprimatur concept concerns speech "so closely connected to the school that it appears the school is somehow sponsoring the speech" and derives from such factors as the level of involvement of school officials in organizing and supervising the event. *Id.* at 925. The pedagogical interest standard is satisfied if the activity is "designed to impart particular knowledge or skills to student participants and audiences." *Id.* Moreover, several other courts have established that the pedagogical test may be satisfied "simply by the school district's desire to avoid controversy within a school environment." *Id.* at 925-26 (listing cases). The Tenth Circuit concluded that *Hazelwood* "allows educators to make viewpoint-based decisions about school-sponsored speech." *Id.* at 926.

Turning to the merits of the case, the court in *Fleming* determined that the tile project was not a public forum, because the school district took numerous actions demonstrating its intent to retain editorial control and responsibility over the project; in other words, the district had not "opened the tile project to indiscriminate use by the participants." *Id.* at 929. In addition, the project bore the imprimatur of the school, as the tiles would be permanently affixed to the school building; moreover, the project was funded, organized, and controlled

---

[3]This portion of the guidelines was thereafter changed.

by the district in terms of selecting participants, holding the tile painting sessions at the school, and setting forth content guidelines. *Id.* at 930-31. Finally, the goal of the tile project involved pedagogical concerns and the guidelines were reasonably related to those concerns. *Id.* at 931-33. Noting that the school has a legitimate interest in "preventing disruptive religious debate on the school's walls," the Tenth Circuit concluded that the restriction on religious content was appropriate. *Id.* at 934.

Applying those standards to this case, I conclude that the valedictorian speech at the school's graduation was not private speech in a limited public forum but rather school-sponsored speech. The school limited the opportunity to speak to valedictorians and screened the content of their speeches. The school, by permitting its highest achieving students give short speeches, did not open its facilities for "indiscriminate use." Accordingly, school officials were entitled to regulate the content of the speeches in a reasonable manner. In addition, the commencement ceremony, even the portion of which the student valedictorian speeches comprised, was school-sponsored expression. The graduation ceremony clearly bears the imprimatur of the school, as it was sponsored, organized, and supervised by school officials. The school sought to exert control over the content of the valedictorian speeches by requiring them to be heard in advance by the principal. In addition, Defendant argues persuasively that the graduation ceremony has a pedagogical concerns as a "final lesson" for departing seniors and that limiting religious exhortations by student speakers would be related to a legitimate concern of not associating the school "with any position other than neutrality on matters of political controversy." *Hazelwood*, 484 U.S. at 272.

Accordingly, Defendant did not violate Plaintiff's First Amendment rights by seeking

10

to screen the content of her speech based on matters reasonably related to the school's legitimate pedagogical concerns. I note also that the Supreme Court in *Hazelwood* expressly rejected the requirement that such editing be pursuant to a written policy. 484 U.S. at 273 n. 6. Moreover, as discussed further below, Plaintiff's actions to evade this screening gave the school a legitimate justification to require an apology.

Plaintiff argues that the analysis of *Tinker* should apply here because of the effect of a state statute, which provides that, "No expression made by students in the exercise of freedom of speech or freedom of the press shall be deemed to be an expression of school policy, and no school district . . . shall be held liable in any civil or criminal action for any expression made or published by students." C.R.S. § 22-1-120(7).[4] Plaintiff has offered no legal analysis to explain how this state statute should alter the federal jurisprudence on private speech versus school-sponsored speech under the First Amendment. I do not read this passage to require schools to give over its fora to student speech without regulation, which is what Plaintiff appears to contend. Moreover, I conclude that the effect of the statute, which might insulate the school from liability for a student's expression "in the exercise of freedom of speech" does not transform Plaintiff's remarks in the valedictorian address into private speech. Accordingly, I disagree that the analysis of *Tinker* or *Adler v.*

---

[4]Plaintiff also argues that another section of this statute means that no school can issue any kind of prior restraint on student speech. C.R.S. § 22-1-120(1) ("no expression contained in a student publication, whether or not such publication is school-sponsored, shall be subject to prior restraint [with certain exceptions].") For the reasons discussed under Part 6, *infra*, I conclude this statute is inapplicable to the issues of this case.

11

*Duval County Sch. Board,* 250 F.3d 1330 (11th Cir. 2001) should apply[5].

       3.     <u>Compelled Speech</u>

As Defendant notes, Plaintiff expressly alleges in her complaint that she "did not apologize for the content of her speech, but prepared a written statement explaining that the statements were her personal beliefs made without Principal Brewer's prior approval." Complaint ¶ 42. Plaintiff was not coerced to express a belief, which would be prohibited. *West Virginia Board of Educ. v. Barnette*, 319 U.S. 624 (1943). Rather, Plaintiff was compelled to apologize for evading the principal's instructions regarding the speech and for any offense her actions might have caused the audience. I conclude this is well within the authority of the school district and does not amount to constitutionally prohibited coerced speech. *See Wildman ex rel. Wildman v. Marshalltown Sch. Dist.*, 249 F.3d 768, 771 (8th Cir. 2001) (no constitutional violation to require student to issue apology as condition of continuing on sports team after student circulated an insubordinate letter; "It is well within the parameters of school officials' authority . . . to teach civility and sensitivity in the expression of opinions"). Plaintiff appears to primarily object to having to add to her apology that "had I asked ahead of time, I would not have been allowed to say what I did," apparently because she believes she should have been allowed to include religious content in her speech. Given the authority discussed above, I conclude that requiring Plaintiff to

---

[5] *Adler*, upon which Plaintiff puts much reliance, involves a short message at the school graduation ceremony by a student speaker not chosen by the school and over whom the school exercised no editorial control at all. Indeed, the published school policy expressly provided that the purpose of the policy was to allow selected students to speak "*without monitoring or review by school officials.*" 250 F.3d at 1332 (emphasis added in the original). Plainly, those facts make *Adler* distinguishable and inapplicable to the issues here.

include this statement in her written apology also did not violate her First Amendment rights.

Plaintiff also appears to object to the apology statement because it required her to be painted as "a liar and deceiver" as a condition of receiving her diploma. Since Plaintiff does not assert a due process claim, I see no constitutional implication from the school allegedly using the diploma as leverage for the apology. Moreover, although Plaintiff's actions appear to have been based on her deeply held commitment to her faith, her own allegations demonstrate that she evaded the school's efforts to control the content of the valedictorian speech. Her failure to disclose the religious nature of her speech gave the principal, her classmates, and others no notice of her intended speech. Plaintiff does not contend that anything was false in her apology (other than her belief that she would or should have been allowed to say what she did) and the statements appear factually accurate. In such circumstances, I perceive no violation of Plaintiff's constitutional rights in having to issue the statement.

    4.    <u>Equal Protection</u>

Defendant argues that Plaintiff's equal protection claim should be dismissed because she was not treated differently than anyone similarly situated to her; since Plaintiff was the only one who deviated from her rehearsed speech, she cannot show that Defendant treated her differently without a legally justified basis. In response, Plaintiff's argument is that she did not do anything wrong, she only "rehearsed a speech before Mr. Brewer and then offered a speech referencing Jesus," which should not be considered a misrepresentation. Response at 18. Plaintiff's argument is unavailing. Although Plaintiff disagrees that her conduct should be considered "deceitful," there is no indication that any

13

other student engaged in the same conduct she did and, therefore, she was not treated differently from any similarly situated person.  Therefore, this claim also must fail.

5. Free Exercise of Religion

Defendant argues that Plaintiff's free exercise claim must be dismissed because the school took no action that placed a substantial burden on her religion, citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Specifically, Defendant argues that Plaintiff cannot demonstrate that it substantially burdened her religion to be required to issue a statement to the community clarifying that her religious beliefs were her own, that her speech was not condoned by the principal of her school, that the principal and others were not aware of what she was going to say, and that she would not have been permitted to make the religious references had she asked first.  In response, Plaintiff argues that she was punished for her Christian viewpoint and her diploma withheld, and that this states a plausible free exercise claim.  Plaintiff cites no authority in support of her position.  As discussed, the school district was within its legal authority to exert editorial control over school-sponsored speech at the graduation and to insist on an apology and clarification for Plaintiff's conduct in evading such efforts at control and thereby associating the school with a position other than neutrality on religion.  Plaintiff's religious practice was not impinged or burdened; rather, she simply was obligated to follow the same rules as the other valedictorians and to realize the consequences when she did not.  *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 702 (10th Cir. 1998) (The Free Exercise clause is "designed to prevent the government from impermissibly burdening an individual's free exercise of religion, not to allow an individual to exact special treatment from the government.").  I conclude that Plaintiff's Establishment Clause claim fails on the same

14

basis.

6. <u>Colorado State Law Claim</u>

Plaintiff's final claim is for violation of C.R.S. § 22-1-120, apparently on the grounds that the policy of screening speeches constitutes a prior restraint of expression in a student publication. C.R.S. § 22-1-120(1) provides:

> The general assembly declares that students of the public schools shall have the right to exercise freedom of speech and of the press, and no expression contained in a student publication, whether or not such publication is school-sponsored, shall be subject to prior restraint except for the types of expression described in subsection (3) of this section. This section shall not prevent the advisor from encouraging expression which is consistent with high standards of English and journalism.

Subsection (3) lists exceptions to this general prohibition, including expression that is obscene, defamatory, false as to persons who are not public figures, and expression that presents a clear and present danger of the commission of wrongful acts. C.R.S. § 22-1-120(3). As noted in Part 2 above, Plaintiff also appears to argue that this and other provisions mean that the school cannot regulate the content of student speech in school fora in any manner inconsistent with this statute. Defendant contends that this provision applies only to written publication, such as school newspapers. I agree with Defendant's reading of this statute.

Under Colorado state law, a court construing a statute must first look at the statute's plain language, and if it is clear and unambiguous on its face, the court should look no further and apply the statute as it is written. *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). Neither side argues that this provision is ambiguous and I read it as having plain meaning. Although the section begins with a recognition that students in public schools

15

"shall have the right to exercise freedom of speech and of the press" it goes on to specifically prohibit prior restraint of "expression" that is contained within a "publication." Were this provision intended to encompass all kinds of speech, including oral speech, the statute need only reference "expression" and the inclusion of "publication" would be surplusage.[6]

Moreover, the entire context of the statute makes clear that "publication" means written media, such as a student newspaper, since there are numerous provisions pertaining to written speech and journalism but not to oral speech, including: subsection (1) ("encouraging expression which is consistent with high standards of . . . journalism"); subsection (2) ("If a publication <u>written</u> substantially by students is made generally available throughout a public school, it shall be a public forum for students of such school) (emphasis added); subsection (4) ("The board of education of each school district shall adopt a written publications code); subsection (5) ("Student <u>editors</u> of school-sponsored student publications shall be responsible for determining the <u>news, opinion, and advertising content of their publications</u> subject to the limitations of this section.") (emphasis added); and subsection (6) ("If participation in a school-sponsored publication is part of a school class or activity . . . the provisions of this section shall not be interpreted to interfere with the authority of the publications advisor for such school-sponsored publication to establish or limit <u>writing assignments</u> for the students working with the publication . . .") (emphasis

---

[6]This construction is further supported by subsection (7) of the statute, noted *supra*, which provides that "no school district . . . shall be held liable in any civil or criminal action for any expression <u>made</u> or <u>published</u> by students." C.R.S. § 22-1-120(7) (emphasis added). Expression "made" is clearly a broader category of speech than expression "published," which is reasonably limited to written speech which is then reproduced and distributed to a wider audience, like a newspaper.

added). C.R.S. § 22-1-120.

Moreover, even if this provision were ambiguous, Plaintiff's interpretation would mean that this statute prevents a school from regulating speech that could violate the Establishment Clause (i.e., even student speech, such as that in *Santa Fe*, which could reasonably be perceived as school endorsement of a religious message, could not be constrained). Such an interpretation would be plainly unconstitutional under *Santa Fe* and *Hazelwood* and therefore is a construction I should avoid.[7] *Thorpe v. State*, 107 P.3d 1064, 1068 (Colo. App. 2004) (" Where a statute is susceptible of a constitutional as well as an unconstitutional construction, the legislature will be presumed to have intended the constitutional construction."); *BCW Enters., Ltd. v. Indus. Claim Appeals Office*, 964 P.2d 533, 537 (Colo.App.1997) ("when possible, statutes should be construed so as to avoid questions of their constitutional validity").

Therefore, I conclude that section 22-1-120(1) by its plain terms does not apply to

---

[7]Subsection (7) does not avoid this problem by decreeing that no student expression "shall be deemed to be an expression of school policy." C.R.S. § 22-1-120 (7). The *Hazelwood* test deals with public perception, i.e., that something closely connected to the school will be seen as bearing the imprimatur of the school. *See Fleming*, 298 F.3d at 925. That perception cannot be made to vanish by legislative fiat.

these circumstances and, even if it did, cannot be construed to prohibit a school from regulating speech that could violate the Establishment Clause.

Accordingly, it is ordered:

1. Defendant's Motion for Judgment on the Pleadings (doc no 24) is granted. Judgment shall enter in favor of Defendant and against Plaintiff on all claims.

DATED at Denver, Colorado, on July 30, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge